Carrol SCHMIDLKOFER
Plaintiff–Appellee,

v.

DIRECTORY DISTRIBUTING, ASSO-CIATES, INC.; Reliance Standard Life Insurance Company Defendants–Appellants.

No. 03–5755.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 2004.

Thomas J. Grady, Segal, Stewart, Cutler, Lindsay, James & Berry, Louisville, KY, for Plaintiff–Appellee.

Before SUTTON and COOK, Circuit Judges; and ROSEN, District Judge.*

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

COOK, Circuit Judge.

Defendants–Appellants Directory Distributing Associates and Reliance Standard Life Insurance Company appeal the grant of summary judgment in favor of Plaintiff–Appellee Carrol Schmidlkofer on her ERISA claim alleging that Reliance Standard's decision to discontinue her disability benefits was arbitrary and capricious. We reverse.

## I

In 1995, Schmidlkofer became ill with several disorders, including hives, depression, and fibromyalgia. She later was diagnosed with skin cancer, which was successfully treated and has not recurred. As a result of the treatment for the skin cancer, she developed lymphadema.

Schmidlkofer began receiving disability benefits in 1996 under a plan sponsored by Directory Distributing, her employer, and administered by Reliance Standard. Schmidlkofer listed fibromyalgia and depression as the disabling conditions. In 2000, Reliance Standard determined that Schmidlkofer no longer met the plan's definition of "totally disabled" because she was able to perform the "material duties of her regular occupation." Schmidlkofer disagreed and, after exhausting all available administrative appeals, filed suit seeking reinstatement of the disability benefits.

On cross-motions for summary judgment, the district court granted summary judgment in Schmidlkofer's favor, ruling that Reliance Standard's termination of her benefits had been arbitrary and capricious because Reliance Standard (1) did not adequately consider Schmidlkofer's treating physicians' statements and (2) "opportunistically" interpreted "regular occupation" to mean Schmidlkofer's general occupation as a branch manager and not her specific position with Directory Distributing.

## II

### A. Standard of Review

This court reviews de novo the district court's ruling, applying the same legal standard as the district court. See Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 613 (6th Cir.1998). A district court applies the "arbitrary and capricious" standard of review to an ERISA plan administrator's decision regarding benefits where, as here, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

### B. Medical Evidence

Shortly after the district court ruled that Reliance Standard erred by not adequately weighing Schmidlkofer's treating physicians' opinions, the Supreme Court decided in Black & Decker Disability Plan v. Nord that the "treating physician rule" (requiring deference to a treating physician's opinion) does not apply in ERISA cases. 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Schmidlkofer argues on appeal that the medical evidence (even without application of the treating physician rule) fails to support Reliance Standard's decision to discontinue her disability benefits.

■ Based on our review of the evidence, we conclude that the district court erred in finding that Reliance Standard's assessment of Schmidlkofer's medical condition was arbitrary and capricious. A plan administrator's determination is not arbitrary or capricious as long as it is "possible to offer a reasoned explanation, based on the evidence, for [that determina-

tion]." *Davis v. Ky. Fin. Cos. Retirement Plan,* 887 F.2d 689, 693 (6th Cir.1989) (alteration in original). Here, the report of Dr. William Hauptman, a physician Reliance Standard engaged to review Schmidlkofer's medical records—including statements from doctors in 1999 and 2000 that her depression had "remitted" and her fibromyalgia was "well-controlled"—supports Reliance Standard's ruling.

Further, the evidence Schmidlkofer cites as proof of the arbitrariness of Reliance Standard's decision fails to convince us. This evidence includes a letter suggesting that Schmidlkofer be re-evaluated by a rheumatologist qualified to assess her fibromyalgia, written by Dr. Michael Krommer, who treated Schmidlkofer for melanoma (which she does not claim is disabling). Dr. Michael Ray's letter opines that Schmidlkofer's illnesses "are chronic and will not disappear in spite of treatment," but the only functional limitation he notes is that she cannot "sit or stand for prolonged periods." And although Dr. George Bierly completed forms supplied by Reliance Standard assessing Schmidlkofer to be "totally disabled," Schmidlkofer presents no treatment records from Bierly to support his conclusory statements.

Because the record reasonably supports Reliance Standard's evaluation of Schmidlkofer's physical condition, we are foreclosed from finding that determination arbitrary and capricious.

### C. Regular Occupation

■ Reliance Standard's plan defines "totally disabled" as unable "to perform the material duties of [the insured's] regular occupation." The plan does not define "regular occupation." Reliance Standard interpreted "regular occupation" to mean Schmidlkofer's occupation "as it is performed in a typical work setting for any employer in the general economy" and,

relying on the Department of Labor's Dictionary of Occupational Titles, determined her "regular occupation" to be a branch manager, which requires only sedentary work. Schmidlkofer counters that her "regular occupation" is her former position with Directory Distributing, which required travel to several states.

The district court agreed with Schmidlkofer, ruling that the "plain meaning" of "regular occupation" is "regular position" and that Reliance Standard therefore arbitrarily decided that Schmidlkofer's regular occupation was branch manager. The district court further criticized Reliance Standard's interpretation on the ground that Reliance Standard had not placed Schmidlkofer on notice that "regular occupation" was a "term of art." But the district court was obligated to uphold the plan administrator's interpretation so long as the interpretation is rational in light of the plain meaning of the words of the policy. *Miller v. Met. Life Ins. Co.,* 925 F.2d 979, 984 (6th Cir.1991) ("An ERISA plan administrator's denial of benefits is not arbitrary and capricious as long as it is rational in light of the plan's provisions." (internal quotation marks omitted)).

Many courts have upheld a plan administrator's interpretation of "regular occupation" as meaning a general occupation rather than a particular position with a particular employer. *See, e.g., Ehrensaft v. Dimension Works Inc. Long Term Disability Plan,* 120 F.Supp.2d 1253, 1259 (D.Nev.2000) ("This Court finds that the term, 'occupation,' is a general description, not a specific one.... A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her 'occupation.' For example, a secretary is not disabled from his or her 'occupation' just because he or she cannot also perform additional tasks assigned by

an employer, such as moving furniture or lifting heavy objects."); *Dionida v. Reliance Standard Life Ins. Co.*, 50 F.Supp.2d 934, 939 (N.D.Cal., 1999) ("The term 'regular occupation' may be fairly construed to mean 'a position of the same general character as the insured's previous job, with similar duties and training requirements.'" (quoting *Dawes v. First Unum Life Ins., Co.*, 851 F.Supp. 118, 122 (S.D.N.Y.1994))); *Hanser v. Ralston Purina Co.*, 821 F.Supp. 473, 478 (E.D.Mich.1993) ("The court finds that defendant's interpretation of the terms 'regular occupation' as meaning the type of work which a covered employee is trained to perform rather than the specific job at which the employee was working when he became ill, is a rational interpretation supported by the plain meaning of the words." (citation omitted)); *cf. Valeck v. Watson Wyatt & Co.*, 266 F.Supp.2d 610, 620–21 (E.D.Mich.2003) (upholding as not arbitrary or capricious the interpretation of both "regular job" and "regular occupation" as "the kind of work [insured] did" rather than the "specific job in the specific office and with the specific supervisor and co-workers with whom she worked"). We thus conclude that Reliance Standard's interpretation of "regular occupation" as meaning Schmidlkofer's occupation as a branch manager, rather than her former position at Directory Distributing, is rational in light of the policy's provisions.

### III

For the foregoing reasons, we reverse the district court's ruling and remand with instructions for entry of summary judgment in favor of defendants.