NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0639n.06

No. 09-2291

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PATRICK SAWDY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL | ) | EASTERN DISTRICT OF MICHIGAN |
| SECURITY, | ) | |
| | ) | **FILED** |
| Defendant-Appellee. | ) | *Aug 29, 2011* |
| | | LEONARD GREEN, Clerk |

Before: GUY, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge. This case stems from an administrative law judge (ALJ) denying a claimant disability benefits under the Social Security Act without giving controlling weight to the claimant's treating physicians or providing good reasons for not doing so. Because such action violates the agency's procedural regulations, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

I.

Appellant Patrick Sawdy has a history of mental and physical impairments. He suffers from mood, anxiety, and paranoia disorders; and he has strained, fractured, and torn his left shoulder.

These problems prompted Sawdy to apply for Social Security disability benefits, *see* 42 U.S.C. §§ 416(i), 423(d), 1382c, and an ALJ held a hearing on his claim.

The record before the ALJ contained several doctors' opinions on Sawdy's shoulder condition, including a 2003 letter from Dr. Gilyard, Sawdy's treating orthopedic surgeon. After examining Sawdy and ordering an MRI, Dr. Gilyard noted that Sawdy's shoulder had "significant" joint instability, and that the MRI revealed a labral tear that left Sawdy unable to work.

This opinion held little sway with the ALJ. When evaluating Sawdy's shoulder, the ALJ passed over Dr. Gilyard's letter, choosing not to reference him by name. Instead, the ALJ found that Sawdy's medications, coupled with treatment records that preceded Dr. Gilyard's opinion, demonstrated that Sawdy could lift fifteen to twenty pounds occasionally and ten pounds frequently, within certain restrictions.

Also in the record were opinions on Sawdy's mental disorders, such as a 2007 correspondence from Dr. Lujan, Sawdy's psychiatrist. Having treated Sawdy for several months, Dr. Lujan opined that Sawdy had generalized anxiety disorder, dysthymic disorder, and schizoid personality disorder; that he had a GAF score of only 40; and that, accordingly, he could not "work in any capacity."

Dr. Lujan's opinion suffered a fate similar to Dr. Gilyard's. In addressing Sawdy's mental condition, the ALJ brushed aside Dr. Lujan's letter, noting that he treated Sawdy for only four

months and based his opinion on "the claimant's subjective reports." After discussing Sawdy's daily activities, current medications, and earlier treatment records, the ALJ concluded that Sawdy's mental problems amounted to "'moderate' difficulties in social functioning" that would not prevent him from performing "simple, repetitive tasks" in an isolated environment.

Based on these functional-capacity findings and Sawdy's other characteristics, the ALJ asked a vocational expert whether the economy offered a significant number of jobs that a person like Sawdy could perform. The expert testified that a person with Sawdy's limitations could find suitable work as a packager or visual inspector, and that his conclusion accorded with the Dictionary of Occupational Titles (DOT). The ALJ agreed. This meant that Sawdy could not collect benefits.

After unsuccessfully appealing to the Appeals Council, Sawdy filed this action in the district court, arguing, among other things, that the ALJ committed procedural error by discounting his treating physicians' opinions without sufficient explanation. Ruling from the bench, the court granted summary judgment to the Commissioner because "the ALJ's decision is supported by substantial evidence on the whole record and that means the decision must be upheld."

II.

On appeal, Sawdy continues to argue that the ALJ committed procedural error in her handling of Drs. Gilyard's and Lujan's medical opinions. With this we agree. He also contends that the vocational expert gave insufficiently precise testimony. With this we disagree.

- 3 -

In reviewing ALJ decisions, we ask two separate questions: whether the decision finds support in substantial record evidence, and whether it conforms to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Even when "substantial evidence otherwise supports the [ALJ's] decision," we must remand if "the agency failed to follow its own procedural regulation." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The "treating source rule" is one such regulation. It demands that an ALJ give "controlling weight" to a medical opinion of a claimant's treating physician as long as it "is well-supported by medically acceptable . . . diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). If an ALJ declines to give controlling weight to such an opinion, the rule still requires the ALJ to fully consider it in accordance with certain factors, *id.* § 404.1527(d)(2)–(6), and to provide "good reasons" for discounting the opinion, *id.* § 404.1527(d)(2)—i.e., reasons "sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to the . . . opinion and the reasons for that weight," SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ here failed to give Sawdy's physicians the proper treating-source treatment. She gave no reason why she deemed Dr. Gilyard's opinion unworthy of "controlling weight," and provided no indication of what weight, if any, she attributed to it. And though the ALJ referenced Dr. Lujan's opinion and arguably found it unsupported by "acceptable . . . diagnostic techniques," *see* 20 C.F.R. § 404.1527(d)(2), she failed to then consider it in light of the § 404.1527(d) factors

and explain the weight that it received in her analysis, along with the specific "good reasons" for that weight.

The course that we must now follow is well charted: when an ALJ violates the treating-source rule, "[w]e do not hesitate to remand," and "we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (first alteration in original) (internal quotation marks and citation omitted).

Resisting this result, the Commissioner argues that substantial evidence nonetheless supports the ALJ's decision. But this is beside the point. We "cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely," because this "would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Wilson*, 378 F.3d at 546.

Though the foregoing analysis requires remand, Sawdy's alternative argument would not. He contends that the vocational expert failed to articulate the precise packaging and inspection jobs in the DOT that he could allegedly perform, and that a number of these positions required abilities beyond his. But Sawdy raised no objection to the vocational expert's testimony below, the ALJ had no "affirmative duty . . . to conduct an independent investigation into the testimony," *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006), and Sawdy presents no authority now

demonstrating an inconsistency between these types of jobs and the limitations considered by the expert.

III.

For these reasons, we vacate the district court's judgment with instructions to remand to the Commissioner for further proceedings consistent with this opinion.