**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0453n.06

Case No. 16-5013

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Aug 05, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHARLES HOWARD MARTIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, GIBBONS, and COOK, Circuit Judges.

COOK, Circuit Judge. Charles Martin appeals a federal magistrate judge's order upholding the decision of an administrative law judge (ALJ) that denied him disability benefits. We AFFIRM.

**I.**

Martin began experiencing symptoms of mental illness after he was convicted of tax fraud and spent time in prison. These psychological problems prompted him to apply for disability benefits. The Social Security Administration (SSA) denied his claims both initially and upon reconsideration. After two hearings before an ALJ and two remands by the Appeals Council, his case was referred to a different ALJ for a third hearing.

That ALJ applied the SSA's familiar five-step analysis to Martin's disability claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In pertinent part, the ALJ found—at step two—that Martin suffered from several severe impairments: migraine headaches, hiatal hernia, gastritis, venous insufficiency, degenerative disc disease, obesity, rule out borderline intellectual functioning, affective disorder, anxiety disorder, and personality disorder. At step three, the ALJ determined that Martin had moderate difficulties in social functioning, performing activities of daily living, as well as maintaining concentration, persistence, or pace, but that none of his impairments individually or in combination met those listed in 20 C.F.R. Part 404, Subpart P, App'x 1.

Turning to steps four and five, the ALJ evaluated Martin's testimony and several medical opinions. He concluded that Martin's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." Discounting some of the medical opinions and crediting others, the ALJ found that Martin could: "understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting on a sustained basis." Accordingly, the ALJ determined that Martin possessed a residual functional capacity (RFC) to perform medium, unskilled work. Using this RFC, the ALJ concluded that Martin could perform jobs existing in significant numbers in the national economy, warranting a finding of non-disability.

The Appeals Council denied review. Martin then appealed to the district court, and a magistrate judge affirmed. He now asks us to evaluate that decision.

**II.**

We review the magistrate judge's order de novo, but disturb the ALJ's decision only if Martin can show either a failure to apply the correct legal standard or fact-finding not supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Martin claims the ALJ committed procedural error—and thus failed to conform to proper legal standards—by inadequately explaining his reasons for discounting certain medical opinions. We first examine his argument that the ALJ violated the treating-source rule and then pivot to his claim that the ALJ improperly analyzed opinions by non-treating sources.

**A. Treating-Source Rule**

Martin maintains that the ALJ failed to recognize that a January 2009 report signed by Kurt Moss—a nurse practitioner—was also signed by a proper treating source, Dr. John Pharis. Thus, Martin claims the ALJ erroneously bypassed the analysis reserved for treating-source opinions.

The record contains two identical versions of the 2009 report, but with one signed only by Moss and another also signed by Dr. Pharis. (The report diagnosed moderate problems related to Martin's social functioning and noted Martin's complaints of hallucinations and extreme anxiety. It also stated that Martin "does not appear to be competent or capable to work at this time because of his unstable psychiatric condition."

In assigning little weight to the report, the ALJ noted that Moss "does not appear to be an acceptable medical source" as he "did not include any professional identifier next to his name/signature." Additionally, the ALJ found that the opinion was "based on [Martin]'s subjective complaints of symptoms rather than objective medical evidence." And the ALJ explained that other parts of the report contradicted the purported occupational limitations:

Martin appeared neat and clean, was open and cooperative, maintained good eye contact, seemed fully alert and well oriented, demonstrated a coherent and logical thought process, and exhibited normal impulse control, memory, and judgment.

Martin argues that Dr. Pharis's signature means the 2009 report deserves to be credited as a treating-source opinion. He reasons from there that the ALJ's failure to recognize it as such warrants remand for proper treating-source review. The magistrate judge found that, although the ALJ failed to credit the 2009 report as the opinion of Dr. Pharis, the ALJ nonetheless provided sufficient reasons for rejecting its conclusion that Martin was unable to work. Accordingly, the ALJ "addressed all the required factors even had" he identified the opinion as Dr. Pharis's. We agree.

An ALJ must accord a treating source's opinion controlling weight only if it is well-supported by objective clinical findings and consistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc). If an ALJ declines to bestow controlling-weight status on the opinion, he must still consider the length, frequency, nature, and extent of the treatment relationship along with the opinion's supportability and consistency, the physician's specialization, and any other pertinent factors. *See* 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). In the end, an ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, the ALJ rejected the 2009 report's finding that Martin was unable to work because the opinion drew from Martin's subjective complaints of symptoms rather than objective medical evidence. This constitutes a proper reason for denying controlling-weight status. *See Smith v.*

*Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (holding that because the treating doctors "formed their opinions solely from [the claimant]'s reporting of her symptoms and her conditions, and the ALJ found that [the claimant] was not credible," the ALJ committed no error in according them less than controlling weight); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given [controlling] deference when supported by objective medical evidence.").

Martin takes issue with this finding, insisting that objective medical evidence supported the report's conclusions. But he raises this substantive challenge for the first time in his reply brief, and we normally refuse to entertain such arguments. *See Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 301 (6th Cir. 2006). Regardless, his argument misses the mark. He cites other reports signed by Dr. Pharis (some dated before Dr. Pharis ever met Martin in person). The cited reports—like the 2009 report—lack objective medical evidence of a mental impairment severe enough to prevent Martin from working.

Once an ALJ decides to withhold controlling weight from a treating source's opinion, he must still consider the length, nature, and extent of the treatment relationship. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ considered these factors as to Dr. Pharis. An ALJ must also consider the opinion's supportability and consistency in discerning the amount of weight due. *See* 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4). The ALJ here found that the 2009 report lacked support in objective medical evidence and was internally inconsistent. Thus, the ALJ applied the proper analysis to the 2009 report.

Citing *Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551 (6th Cir. 2011), Martin insists that this conclusion rests on a harmless-error rationale that our court has rejected. But in *Sawdy*, the ALJ "gave no reason why she deemed [a treating physician's] opinion unworthy of

'controlling weight,' and provided no indication of what weight, if any, she attributed to it." *Id.* at 553. And though the ALJ in *Sawdy* referenced a second treating physician's opinion and found it unsupported by acceptable diagnostic techniques, she "failed to then consider it in light of the [supportability and consistency] factors and explain the weight that it received in her analysis, along with the specific 'good reasons' for that weight." *Id.* By contrast, the ALJ here specifically assigned "very little weight" to Dr. Pharis's and Moss's medical opinions— including those contained in the 2009 report—and provided specific reasons for doing so. The ALJ therefore met the procedural safeguards important to the reasons-giving, treating-source rule. Remand is unwarranted.

### B. Non-treating Source Opinions

Martin also argues that the ALJ failed to explain why certain aspects of two opinions by non-treating sources were omitted from his RFC. Dr. Rebecca Joslin, a non-examining state agency physician, reviewed Martin's medical record and opined that he was markedly limited in his ability to interact appropriately with the general public and moderately limited in his ability to get along with coworkers and to respond appropriately to changes in the work setting. Martin exhibited no significant limitations in any other areas, including sustained concentration, understanding and memory, accepting instructions from supervisors, maintaining socially appropriate behavior, and traveling in unfamiliar places. The ALJ discussed all of the state agency consultants' opinions collectively, finding that their assessments were "well supported by objective medical evidence and . . . consistent with the record as a whole." He accorded only "partial weight" to their opinions, however, because "evidence received at the hearing suggests [Martin] may be more limited than they originally determined."

The opinion of Dr. Stephen Rutledge, a one-time consultative examiner, largely mirrored Dr. Joslin's opinion, except that he found a moderate to marked impairment in Martin's ability to sustain concentration. The ALJ took issue with Dr. Rutledge's finding of limited concentration, as that opinion was grounded in the fact that Martin "often did not remain on topic" during the session. Noting that Dr. Rutledge found Martin evasive and guarded, the ALJ decided that Martin's "failure to remain on topic could be evidence of his attempt to portray himself as more limited than he actually is." Also, Dr. Rutledge's findings that Martin demonstrated normal memory functioning, above average intelligence, and an ability to follow both written and spoken instructions without difficulty were not reflective of the ascribed limits on concentration. The ALJ also noted that, throughout the record, Martin's "attention and concentration were frequently within normal limits."

Martin protests the ALJ's lack of explanation as to why Martin's marked impairment in interacting with the general public—as found by Dr. Joslin—and his moderate to marked impairment in his ability to sustain concentration—as found by Dr. Rutledge—were not explicitly incorporated into Martin's RFC. But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions. *See Smith*, 482 F.3d at 876 ("[T]he SSA requires ALJs to give reasons for only *treating* sources."); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. 2015) (same). Moreover, as to Dr. Rutledge, the ALJ *did* specifically explain why he rejected the purported limitations on concentration, and Martin offers no substantive challenge to those reasons.

Martin claims that the ALJ's lack of explanation flouts our decision in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013). There, the court faulted the ALJ for applying a more critical standard of scrutiny to the treating source's opinions than he did to opinions of

several non-treating doctors. *Id.* at 379–80. Specifically, the court held that the inconsistencies the ALJ found in the treating source's opinions could not "constitute 'good reasons' for affording them little weight when more flagrant inconsistencies [went] unquestioned in the medical opinions to which the ALJ deferred." *Id.* at 380. We struggle to see how *Gayheart* applies to Martin's argument, as he never posits that the ALJ erred in crediting the non-treating sources' opinions over those of a treating source. He argues instead that the ALJ failed to explain reasons for *rejecting* portions of the non-treating source's opinions. Thus, his reliance on *Gayheart* is misplaced.

## III.

Accordingly, we AFFIRM the denial of disability benefits.