**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3566
_____

CHRISTOPHER PATTERSON

v.

AETNA LIFE INSURANCE COMPANY,

Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-15-cv-08156)
District Judge: Madeline C. Arleo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 1, 2018
_____

Before: CHAGARES, JORDAN, and VANASKIE,[*] *Circuit Judges*

(Opinion Filed: February 7, 2019)
_____

OPINION[**]
_____

_____

[*] The Honorable Thomas I. Vanaskie retired from the Court on January 1, 2019 after the case was submitted, but before the filing of the opinion. This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

JORDAN, *Circuit Judge*.

In this appeal, Defendant Aetna Life Insurance Company challenges the District Court's grant of Plaintiff Christopher Patterson's motion for summary judgment and denial of Aetna's motion for summary judgment in an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the following reasons, we will affirm.

## I.    BACKGROUND

Though his employer, First Consulting Group, Inc. ("FCG"), Patterson became covered by a long-term disability policy underwritten by Aetna.[1] Aetna began paying benefits to Patterson under the policy in 2007, after he underwent a back surgery and became unable to work. In 2014, Aetna terminated those benefits because it concluded that Patterson was "no longer disabled[.]" (App. at 292.)

Patterson's long-term disability policy defines "disability" as follows:

You will be deemed to be disabled on any day if:

- you are not able to perform the **material duties** of your **own occupation** solely because of: disease or **injury**; and
- your work earnings are 80% or less of your **adjusted predisability earnings**.

(App. at 334.) "Own occupation" is not defined in the policy.

Aetna found that Patterson was not disabled because he could fulfill the material duties of his "own occupation" as performed "in the national economy." (App. at 290,

---

[1] FCG is a pharmaceutical consulting firm. Patterson's position was characterized as "Director, Business Services" or, more generally, as "System Development Technical Director." (App. at 40, 150.)

2

293.) Aetna determined that Patterson's "own occupation" "in the national economy" was "sedentary" and that—although Patterson had limitations and could not do a job in a "heavier category"—he could perform "sedentary" work. (App. at 56, 290-91, 293.) Aetna's decision was not based on whether Patterson could do his actual "job as performed for his specific Employer[,]" which Aetna considered to be more demanding than his "occupation as it exists in the national economy[.]"[2] (App. at 51, 290.)

After Aetna denied Patterson's internal appeal, he brought this ERISA claim. On cross motions for summary judgment, the District Court determined that Aetna's "national economy" interpretation of "own occupation" was contrary to the plain language of Patterson's policy in light of our decision in *Lasser v. Reliance Standard Life Insurance Co.*, 344 F.3d 381 (3d Cir. 2003), and that "'own occupation' must involve consideration of Patterson's actual duties as performed before the onset of disability." (App. at 19.) It then found that "travel and standing to give presentations are material duties of [Patterson's] own occupation." (App. at 21.) The District Court concluded that Aetna's decision to terminate benefits was arbitrary and capricious because Aetna did not consider whether Patterson could perform his actual job duties and, even if it had done so, Patterson could not perform those duties.[3]

---

[2] Specifically, Aetna found that Patterson's "occupation as it exists in the national economy" "is lighter than [his actual] job" because his actual job might require travel. (App. at 51.)

[3] In the alternative, the Court decided that, even under a "national economy" approach to "own occupation," Aetna's decision was arbitrary and capricious.

Aetna timely appealed.

## II.  DISCUSSION[4]

Aetna argues on appeal that it was allowed to construe the term "own occupation" in Patterson's long-term disability policy to mean Patterson's occupation as performed in the national economy.  Aetna further asserts that, under its "national economy" interpretation, substantial evidence supports the decision to terminate Patterson's benefits. We disagree and conclude that Aetna was required to interpret "own occupation" as referring to Patterson's actual job duties.  Because Aetna offers no argument as to how it could prevail under that interpretation, we will affirm.

Under ERISA, where a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]" courts "review a denial of benefits under an 'arbitrary and capricious' standard." *Fleisher v. Std. Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citations omitted).  "An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 121 (citation omitted).  Where the "arbitrary and capricious" standard applies, we will defer to an administrator's reasonable interpretation of ambiguous plan language, but an administrator's interpretation

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)-(f).  We have jurisdiction pursuant to 28 U.S.C. § 1291.  "We exercise plenary review over the district court's grant of summary judgment, applying the same standard that the court should have applied." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010).  "Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

4

may not conflict with the plain language of the plan.  *Id.*; *Lasser*, 344 F.3d at 385-86; *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997).

Here, Aetna has discretionary authority to interpret Patterson's policy.  But our precedent—particularly *Lasser*—indicates that "own occupation" is unambiguous and that Aetna's "national economy" interpretation of the term cannot stand.[5]

In *Lasser*, we interpreted a long-term disability policy that considered a person to be "disabled … if as a result of injury, illness or disease he is capable only 'of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis.'"  344 F.3d at 385.  We held that the term "regular occupation" is unambiguous and refers to "the usual work that the insured is actually performing immediately before the onset of disability[,]" at least where no other definition appears in a policy or has been otherwise anticipated by the parties.  *Id.* at 385-86.  We therefore

---

[5] "Claims for benefits based on the terms of an ERISA plan are contractual in nature and are governed by federal common law contract principles."  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011).  Patterson's policy contains a clause stating that it "will be construed in line with the law of the jurisdiction in which it is delivered[,]" i.e., California.  (App. at 109.)  But Aetna neither argues that California law— as opposed to federal law—should govern the interpretation of "own occupation" nor invokes the choice of law clause.  Choice of law issues are forfeited if not raised.  *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 317 (3d Cir. 2014).

Aetna does suggest that applying Third Circuit law would be improper because the case is here only by operation of 29 U.S.C. § 1132(e)(2), which permits an ERISA plaintiff to bring suit, *inter alia*, wherever "a defendant resides or may be found[.]"  29 U.S.C. § 1132(e)(2).  That suggestion, however, is misguided.  "We are … generally obligated to follow our precedent[,]" *Karns v. Shanahan*, 879 F.3d 504, 514 (3d Cir. 2018), and nothing suggests that 29 U.S.C. § 1132(e)(2) alters that general rule.

rejected the insurer's interpretation of "regular occupation" as referring to a job "in the general economy."[6] *Id.* at 385-87.

Aetna argues that *Lasser* is not controlling because the policy in *Lasser* used the term "regular occupation" whereas the policy here uses the term "own occupation." But we have equated "own occupation" with *Lasser*'s definition of "regular occupation." *See McCann v. Unum Provident*, 907 F.3d 130, 148 (3d Cir. 2018) ("We held [in *Lasser*] that [b]oth the purpose of disability insurance and the modifier his/her before *regular occupation* made clear the analysis had to be conducted based on the insured's *own occupation*." (emphasis added) (citation and internal quotation marks omitted)). Other courts, moreover, have recognized that the distinction between "own occupation" and "regular occupation" is one without a legal difference. *See Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 300 (6th Cir. 2006) ("The only possibly significant distinction between that case and the present one is that there the policy term was 'regular occupation' and here it is 'own occupation.' That relatively minor difference in language does not warrant a different result."); *see also Hankins v. Std. Ins. Co.*, 677 F.3d 830, 835-36 (8th Cir. 2012) (discussing case law relevant to the interpretation of "Own Occupation[,]" when that term is undefined, and referencing both "regular occupation" and

---

[6] We also held, in the alternative, that, "[e]ven assuming 'regular occupation' is susceptible to multiple interpretations and therefore ambiguous," the insurer's interpretation of "regular occupation" was unreasonable in light of out-of-circuit decisions. *Lasser*, 344 F.3d at 386-87 (citing *O'Bryhim v. Reliance Std. Life Ins. Co.*, 188 F.3d 502 (4th Cir. 1999) (table) (per curiam); *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243, 253 (2d Cir. 1999); *Dawes v. First Unum Life Ins. Co.*, 851 F. Supp. 118, 122 (S.D.N.Y. 1994)). Aetna raises some arguments about that portion of the opinion, but it is inapposite here.

6

"own occupation" cases). Additionally, even if a difference between "own occupation" and "regular occupation" could be teased out, the words "own occupation" would seem even more directly to capture the idea of one's actual job duties than the words "regular occupation." *See Osborne*, 465 F.3d at 302-03 (Cole, J., dissenting) ("Whatever the meaning of 'regular' is, it is not synonymous with 'own.' … Construing the policy language according to its 'plain meaning in an ordinary and popular sense' then, 'own occupation' refers to [the insured's] actual job duties." (citations omitted)); *see also House v. Am. United Life Ins. Co.*, 499 F.3d 443, 453-54 (5th Cir. 2007) (quoting the *Osborne* dissent's statement that, "[w]hatever the meaning of 'regular' is, it is not synonymous with 'own[,]'" to support the proposition that an attorney's "regular occupation" was "not restricted to his own specific job" (citation omitted)). In short, there is no reason to treat "own occupation" and "regular occupation" differently here.

Indeed, Aetna itself seems to subscribe to that view. In *Peck v. Aetna Life Insurance Co.*, 495 F. Supp. 2d 271 (D. Conn. 2007), Aetna successfully argued that the terms "own occupation" and "regular occupation" are interchangeable. *See id.* at 277 n.5 ("The relevant policy language … actually referred to 'regular' rather than 'own' occupation. However, these terms, *as Aetna asserts*, are interchangeable." (emphasis added)).[7] And that case was litigated while Aetna was paying benefits to Patterson under his policy.

---

[7] Given Aetna's vigorous arguments in *Peck* that "own occupation" and "regular occupation" have the same meaning, its assertions to the contrary here are, to say the least, quite troubling. *Compare* Def. Aetna Life Ins. Co.'s Mem. of Law in Supp. of Its Mot. for Summ. J. at 12 n.8, *Peck*, 495 F. Supp. 2d 271 (No. 3:04-cv-1139) ("The terms 'regular occupation' and 'own occupation' may be used interchangeably, because, 'as one's 'own occupation' is the occupation that one 'owns,' it is the same thing as one's 'regular

Because we conclude that "own occupation" and "regular occupation" should be construed in the same manner, *Lasser* controls our interpretation of "own occupation" here. The unambiguous plain meaning of that term, then, is "the usual work that the insured is actually performing immediately before the onset of disability." *Lasser*, 344 F.3d at 385-86. Aetna's "national economy" interpretation is impermissible because it conflicts with the plain meaning of "own occupation" and was neither established by Patterson's policy nor contemplated by the parties.[8] *Id.* at 385-87. Accordingly, the term "own occupation" in the policy required Aetna to consider Patterson's actual job duties.

---

occupation.'" (citation omitted)), *and* Def. Aetna Life Ins. Co.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. & Reply Br. in Supp. of Its Mot. for Summ. J. at 13-15 & n.10, *Peck*, 495 F. Supp. 2d 271 (No. 3:04-cv-1139) ("Peck cites no authority for the proposition that the term 'own occupation' should be construed more narrowly than the term 'regular occupation.' In fact, courts have treated the terms as being interchangeable." (citation omitted)), *with* (Reply Br. at 9-10 ("The term 'regular occupation' implies something that the claimant actually did in his employment on a consistent basis, that is, his or her 'regular' occupation. In this context, the modifier 'regular' is fairly synonymous with 'typical,' 'normal,' 'customary' or 'standard,' all of which imply the employee's actual functions, and is contrasted with the more abstract word 'occupation,' standing alone. … 'Own occupation' or 'your own occupation' does not carry such an implication, but is simply a contrast to 'any reasonable occupation' in long-term disability policies that, unlike the case here, have two tests of disability applied successively. … [W]hile similar, [the two terms] are not interchangeable.").) It is further concerning that Aetna distinguishes *Peck* by saying "it is not determinative that a District Court in Connecticut held that 'regular' and 'own' were 'interchangeable[,]'" without acknowledging that its own argument was the impetus for that holding. (Opening Br. at 32 (quoting *Peck*, 495 F. Supp. 2d at 277 n.5).)

[8] Nothing in the record indicates that a "national economy" definition of "own occupation" was anticipated by Patterson or FCG prior to Aetna's denial of benefits. In fact, Aetna paid benefits to Patterson from 2007 to 2014, notwithstanding that, in 2009, an independent medical examination commissioned by Aetna determined that Patterson could engage in sedentary work, i.e., work commensurate with his occupation in the national economy.

That conclusion resolves this case. Aetna does not contest the District Court's determination that summary judgment should be granted in Patterson's favor if *Lasser* required consideration of his actual job duties.[9] Arguments are forfeited if not raised. *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017). There are no remaining issues for us to address.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[9] Despite expressing some displeasure about the evidence of Patterson's specific job duties, Aetna nowhere argues that the District Court erred in its assessment, based on the record, that Patterson could not perform the material duties of his actual job.

9