*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0082p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SHERRY DELISLE,

　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

SUN LIFE ASSURANCE CO. OF CANADA,

　　　　　　　　　*Defendant-Appellant.*

No. 08-1142

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-11761—Lawrence P. Zatkoff, District Judge.

Argued: October 31, 2008

Decided and Filed: March 4, 2009

Before: MARTIN, BATCHELDER, and DAUGHTREY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Mark E. Schmidtke, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Chicago, Illinois, for Appellant. John J. Conway, JOHN J. CONWAY, P.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Mark E. Schmidtke, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Chicago, Illinois, Brian D. Black, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellant. John J. Conway, JOHN J. CONWAY, P.C., Detroit, Michigan, for Appellee.

　　　　MARTIN, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. BATCHELDER, J. (pp. 11-13), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

　　　　BOYCE F. MARTIN, JR., Circuit Judge. Defendant Sun Life appeals the district court's decision that Sun Life's denial of long-term disability benefits to Plaintiff Sherry DeLisle was arbitrary and capricious. We agree with the district court that Sun Life's

1

determination did not result from a deliberate and principled reasoning process. Accordingly, we AFFIRM.

I.

Sidney Krandall & Sons, a retail jeweler, employed Sherry DeLisle as Director of Operations from January 1996 until April 2002. While at Krandall, DeLisle participated in its disability plan, which was funded by a group policy of long term disability insurance issued by Sun Life. Under the policy, disability occurred when:

> [D]uring the Elimination Period and the next 24 months, the Employee, because of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation. After Total or Partial Disability benefits combined have been paid for 24 months, the Employee will continue to be Totally Disabled if he is unable to perform with reasonable continuity any Gainful Occupation for which he is or becomes reasonably qualified for by education, training or experience.

In 1998, DeLisle was involved in a car crash, suffering head, neck, and back injuries for which she underwent a full anterior spinal fusion. DeLisle was involved in a second car crash in 2000, in which she re-injured her spine and suffered a closed head injury. She continued working after these crashes, under the care of three healthcare providers. They included Dr. Ho, a neurosurgeon, Dr. Rudy, a doctor of osteopathy, and Diane Cushing, a licensed professional counselor who treated DeLisle for "cognitive behavioral therapy."

On April 17, 2002, Krandall fired DeLisle because, as it reported to Sun Life, she "she was not doing her job." The record does not reveal whether DeLisle "not doing her job" was related to injury or sickness. DeLisle filed for state unemployment benefits, stating in her application that she was fired due to "lack of work." She worked at another job for about two weeks, but was fired, because, as she reported to Cushing, she "held [her] ground about how may hours [she] would work." In December, about eight months after she was fired from Krandall, DeLisle filed a claim for long-term disability benefits with Sun Life. She supported her claim with her medical records and five attending physician statements, all finding her disabled from performing her "own occupation" as of April 17—her last day of work at Krandall.

In 2003, the Social Security Administration determined that DeLisle was disabled and eligible for Social Security Disability Insurance payments effective April 17, 2002.

Despite this, Sun Life denied DeLisle's claim and upheld its decision on appeal, finding that she was "not covered" under its policy because she was not "actively at work" when her disability arose. DeLisle challenged this in district court under Section 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B). The district court decided that Sun Life's denial was arbitrary and capricious and set aside its decision, ordering it to determine whether DeLisle was disabled on the day Krandall fired her—April 17, 2002.

On remand from the district court, Sun Life considered DeLisle's medical evidence which included opinions from Dr. Ho, Cushing, and Dr. Rudy, all of whom had treated her in the months before her firing. She also gave Sun Life opinions about her condition from Dr. Noomie, a doctor of chiropractics, Dr. Kerkar, a medical doctor specializing in pain management, and Dr. Branca, a neuropsychologist. Those providers diagnosed her as suffering from: neck and low back injuries, including degenerative disc disease, radiculopathy (a condition resulting from nerve damage), closed head injury, chronic pain syndrome, post traumatic syndrome, major depressive disorder, and a Class 5 mental impairment, characterized by "significant loss of psychological, physiological, personal, and social adjustments."

Sun Life sent DeLisle's medical records for review by Dr. O'Connor, a clinical neuropsychologist, Dr. Himber, a psychiatrist, and Dr. Sarni, an orthopedist, as well by a rehabilitation consultant. Sun Life denied her claim a second time, this time saying that the medical evidence did "not document the presence of conditions physical, psychological, or cognitive in nature of such severity that [DeLisle] could not continue to perform her occupation on April 17, 2002 or thereafter . . . ." DeLisle appealed and Sun Life sent her medical records to three more reviewers including Dr. Johnston, a neuropsychologist, Dr. Pies, a psychiatrist, and Dr. Corzatt, an orthopedic surgeon. Five of the six file reviewers were regular independent contractors with Sun Life. After the reviewers gave Sun Life their opinions, it upheld its earlier denial.

DeLisle sued Sun Life again under ERISA Section 502(a). The district court granted DeLisle's motion for judgment on the administrative record on October 12, 2007 because Sun Life's denial of benefits was arbitrary and capricious. *DeLisle v. Sun Life Assurance Co. of Can.*, 2007 WL 3013075 (E.D. Mich. Oct. 12, 2007). The district court sent DeLisle's

claim back to Sun Life to determine her benefit amount, and it later ordered Sun Life to pay her attorneys' fees.  Sun Life now appeals.

## II.

We "review *de novo* the decision of a district court granting judgment in an ERISA disability action based on an administrative record." *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006), *aff'd*, *Met. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008)).  If, as here, the insurance plan administrator is vested with discretion to interpret the plan, we review the denial of benefits under the arbitrary and capricious standard.  *Id.* (citing *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115 (1989)).  This requires "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).  The plan administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Glenn*, 461 F.3d at 666.

## III.

This Court considers several factors in reviewing a plan administrator's decision, including the existence of a conflict of interest, the plan administrator's consideration of the Social Security Administration determination, and the quality and quantity of medical evidence and opinions.  *Id.*  Here, we also review Sun Life's reliance on non-medical evidence to deny benefits.

### A.  Conflict of Interest

The Supreme Court recently held that a conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when, as here, the administrator is an insurance company and not the beneficiary's employer. *Glenn*, 128 S. Ct. at 2348-50.  We give more weight to the conflict "where circumstances suggest a higher likelihood that it affected the benefits decision . . . ." *Id.* at 2351.  A conflict may affect a benefits decision in several ways.  For example, although the treating physician rule does not apply in ERISA cases, the Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements." *Black &*

*Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003). And our own Court has observed that when a plan administrator both decides claims and pays benefits, it has a "clear incentive" to contract with consultants who are "inclined to find" that a claimant is not entitled to benefits. *Kalish v. Liberty Mutual/Liberty Life Assurance*, 419 F.3d 501, 507 (6th Cir. 2005).

Here, DeLisle offers more than conclusory allegations of bias. Five of the six file reviewers Sun Life relied on were under regular contract with Sun Life. The record reveals that Sun Life's in-house attorney told at least some of its medical file reviewers that DeLisle was "terminated for cause." But that is not what Krandall told Sun Life—the only information in the record about the reason for DeLisle's firing is a transcribed telephone message taken by a Sun Life employee which reports that someone from Krandall said DeLisle was fired "because she was not doing her job." There is no further documentation or explanation from Krandall about the circumstances surrounding the firing. Sun Life's attorney's characterization as "terminated for cause" discounts the possible conclusion that "she was not doing her job" because "sickness or injury" left her unable "to perform [her job's] substantial and material duties." Of course, DeLisle's ability to perform her job was the very question Sun Life wanted the medical file reviewers to answer. Without more, the bald assertion that she was fired "for cause" gave the file reviewers incomplete and potentially prejudicial information, which should have been irrelevant to an impartial assessment of DeLisle's ability to perform her job on a particular day. We find an increased risk of bias in the medical file review process when a conflicted plan administrator gives information to regular independent contractor-consultants that portrays the claimant in a negative light. These improper communications suggest "procedural unreasonableness" which "justifies the court in giving more weight to the conflict." *See Glenn*, 128 S. Ct. at 2352. We thus properly consider evidence of the "incentive" to make a finding of "not disabled" in determining whether Sun Life's decision was arbitrary and capricious. *Kalish*, 419 F.3d at 508 (citing *Nord*, 538 U.S. at 832).

### B. Social Security Administration's Determination of Total Disability

A determination that a person meets the Social Security Administration's uniform standards for disability benefits does not make her automatically entitled to benefits under

an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's. *Whitaker v. Hartford*, 404 F.3d 947, 949 (6th Cir. 2005). Nonetheless, the Social Security Administration's decision "is far from meaningless." *Calvert*, 409 F.3d at 294. Although there is no technical requirement to explicitly distinguish a favorable Social Security determination in every case,

> [i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious.

*Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008).

Here, the terms of Sun Life's plan required that DeLisle apply for Social Security Disability benefits and to appeal the denial "to all administrative levels Sun Life deems necessary." So, she was required, not merely encouraged to apply. Sun Life also received a financial offset from future liability based on DeLisle receiving Social Security Disability benefits. And none of the three denial letters Sun Life sent DeLisle mentions her Social Security determination as a factor that Sun Life considered in reaching its own determination. Only one of Sun Life's file reviewers even acknowledged in his report that he was aware of the Social Security determination. Even though Sun Life did not have the opinion accompanying the notice of award, it still was well aware of the uniform federal standard that applies to Social Security claims. Sun Life's silence here does not make its denial arbitrary per se, but is among those "serious concerns" that, "taken with some degree of conflicting interests," provide a proper basis for concluding that the administrator abused its discretion. *See Glenn*, 128 S. Ct. at 2352.

### C. Quality and Quantity of Medical Evidence

In considering the medical evidence, we first address Sun Life's argument that the district court impermissibly shifted the burden of proof to Sun Life to disprove DeLisle's disability as of April 17. In support of its argument, Sun Life points to the district court's observation that Sun Life's file reviewers "cannot state conclusively that [DeLisle] was not disabled on April 17." *DeLisle*, 2007 WL 3013075 at *10. While Sun Life is correct that

DeLisle carries the burden of proving her disability, the district court's observation must be considered in its proper context, which was at the conclusion of its survey of the medical evidence submitted by both sides. In context, it becomes clear that the district court's observation is properly characterized as an evaluation of the quality of the reasoning process that Sun Life undertook and was not a burden shift. Notably, the district court's opinion did not rely on any failure by Sun Life to disprove DeLisle's disability. Rather, it concluded that "given the [Sun Life] consultants' concessions, the SSA determination of total disability, and the inherent conflict of interest, the major factors to be considered fall in favor of Plaintiff." *Id*.

A court's review for arbitrary and capricious decision-making "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald*, 347 F.3d at 172. The district court set forth general synopses from both sides' medical evidence, including six opinions submitted by DeLisle and six by Sun Life. *DeLisle*, 2007 WL 3013075 at *8-9.

DeLisle's therapy notes and medical assessments in the months leading up to her firing include complaints of anxiety and depression. Her primary care physician, Dr. Rudy noted that she was coping with "tremors," "fatigue," "spasms," and "double-vision." Her neurosurgeon, Dr. Ho, who treated her on a monthly basis since January 1999 had prescribed a full neck brace, noted an increase in neck pain in December 2001, and recorded his recommendation, "as soon as possible, after the holidays, she take some time to cut back on working and be off of her feet." That the medical providers who were treating DeLisle before her firing did not explicitly include in their medical opinions statements indicating that she was disabled is of little consequence because DeLisle affirmatively wanted to work through her ailments.

Moreover, her treating physicians from that time period—as well as other physicians who began treating her after she stopped working—reviewed her medical records and concluded, among other diagnoses that she was suffering from "major depressive disorder and anxiety disorder," "memory retrogression," "significant loss of psychological, physiological, personal and social adjustments of severe limitation." In an interview with

Sun Life, Dr. Ho explained that "although the disability date is 4/17/2002, the period of disability could have been long before that."

Sun Life's experts, including Dr. O'Connor, Dr. Himber, Dr. Pies and Dr. Sarni, largely agreed with the diagnoses, but discounted the effect they had on DeLisle's ability to work. In addition, Dr. O'Connor and Dr. Johnston noted that DeLisle did not complain of neuropsychological or cognitive impairments until after she was fired. And Dr. Corzatt pointed out that Dr. Ho had not imposed restrictions on DeLisle's ability to work. Although Sun Life does not owe special deference to the opinion of DeLisle's treating physicians, *see Black & Decker*, 538 U.S. at 834, it may not arbitrarily ignore them. *Glenn*, 461 F.3d at 671. Notably, Sun Life's medical professionals found support in DeLisle's medical records for the disorders described above, but discredited the date of disability on the basis that the records did not demonstrate a change in condition around April 17. None of Sun Life's reviewers confront Dr. Ho's characterization of the "progressive nature of her medical conditions," which would not manifest itself by a "significant change" on a particular date. And, as noted above, it is unclear whether Sun Life's file reviewers knew of the Social Security determination of total disability, or were unfairly swayed by communications from Sun Life's in-house attorney. On this record, we find that the entirety of the medical evidence available to Sun Life was not reviewed in a "deliberate" or "principled" fashion, which is a factor suggesting that Sun Life's ultimate determination was arbitrary.

### D. Reliance on Non-Medical Evidence

Finally, we consider Sun Life's reliance on non-medical evidence, specifically the fact DeLisle continued to work until she was fired, and only several months later claimed to be disabled. This Court recently considered a similar case where an employee stopped working, but later claimed that he was disabled on his last day of work. *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860 (6th Cir. 2007). In *Rochow*, the claimant was fired in January because he could not perform "material duties" of his job after he began experiencing short-term memory loss, occasional chills, sporadic sweating and stress. He did not file a claim for disability benefits with his former employer until December, nearly eleven months after his disability coverage had lapsed. Nevertheless, he argued that he was disabled on the last day he was working for his employer. In affirming the district court's decision that the

denial of benefits was arbitrary and capricious, this Court observed that "there is no 'logical incompatibility between working full time and being disabled from working full time.'" *Id.* at 865 (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003)). The same is true here.

In further support of its denial, Sun Life points out that Cushing's treatment notes state that DeLisle reported she was fired "based on personality issues vs. job performance." But this report does not foreclose the possibility that DeLisle was nonetheless disabled on the day she was fired or that the firing was related to her sickness or injury. Sun Life also says that DeLisle's two-week employment elsewhere following her firing is evidence she was not disabled on April 17. It is not reasonable to conclude from a brief, ultimately unsuccessful attempt to work, that DeLisle was not disabled from her job at Krandall on the day she was fired. Finally, DeLisle's application for unemployment benefits and listing "lack of work" as her reason for Krandall firing her does not, in the face of the substantial medical evidence indicating that she was suffering from a traumatic head injury and major depression at the time, amount to persuasive evidence that DeLisle was able to complete the duties of her job on April 17. And this is especially true where the progressive nature of her diagnoses may have made it difficult for her to acknowledge her disability.

## *CONCLUSION*

Even under the highly deferential standard of review, we cannot uphold Sun Life's denial of DeLisle's long-term disability benefits. The conflict of interest, improper communication from Sun Life's attorneys to file reviewers, and failure to acknowledge the Social Security disability determination in the face of substantial medical evidence indicating the progressive nature of DeLisle's disability show that Sun Life did not engage in a principled, deliberative reasoning process. We therefore conclude that Sun Life's decision to deny long-term benefits was arbitrary and capricious. Accordingly, we AFFIRM the judgment of the district court.

———————————

**DISSENT**

———————————

ALICE M. BATCHELDER, Circuit Judge, dissenting.  I respectfully dissent, because I believe that the district court failed to apply the appropriate standard of review.  "Where, as here, an insurance plan administrator is vested with discretion to interpret the plan, we review the denial of benefits under the arbitrary and capricious standard." *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865 (6th Cir. 2007) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  "This standard 'is the least demanding form of judicial review of administrative action . . . .  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'"  *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)).  "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'"  *Id.*

Although the district court acknowledged that Sun Life had presented a significant quantity of medical evidence in support of its finding of no disability, the court discounted the quality of this evidence.  Specifically, the court had difficulty with the fact that Sun Life's reviewing professionals conceded DeLisle's "veritable cornucopia of afflictions" but nonetheless concluded that she was not disabled.  In the court's opinion, "[t]he most likely explanation" for DeLisle's termination was that she had become disabled as a result of her deteriorating physical condition.  Under the arbitrary-and-capricious standard, however, it is improper for a reviewing court to weigh conflicting evidence or substitute its judgement for that of the plan administrator.  *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005); *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949-50 (6th Cir. 2005).

Substantial evidence in the record supports Sun Life's findings that DeLisle was terminated from her job at Sidney Krandall & Sons for reasons unrelated to her health and that she was not disabled as of April 17, 2002, the date of her termination.  The same day Krandall terminated her employment, DeLise told her therapist, Diane Cushing, that she "got

fired." Cushing's session notes recite that the firing was "based on personality issues vs. job performance." A Krandall representative reported to Sun Life that DeLisle "was terminated because she was not doing her job." In an application for state unemployment benefits, DeLisle stated that she lost her job at Krandall due to "lack of work." DeLisle secured other employment but was fired two weeks later over a dispute about her work hours.

As part of its own investigation, Sun Life had three physicians and a rehabilitation consultant review DeLisle's medical records. Although these professionals agreed with some of the diagnoses of DeLisle's conditions, they all concurred that there was insufficient evidence that she was disabled as of April 17, 2002. When DeLisle appealed that determination, Sun Life had three additional physicians review the records. They, too, agreed that DeLisle's information did not support a finding of disability. The district court noted that "[Sun Life's] medical consultants found bases for many of [DeLisle's] maladies but, without conducting personal examinations, discounted the effect of these maladies on her ability or inability to work. Had [Sun Life's] consultants disputed the major diagnoses of [DeLisle's] physicians, this case might reach a different result." DeLisle did not file her claim for plan benefits until eight months after the date of her termination. At that point, Sun Life's reviewing physicians had to rely on available medical records because they could not observe DeLisle's physical condition as it existed on or about April 17, 2002. There is no reason to conclude that these professionals were less capable of reaching an opinion on DeLisle's disability based on those records than they were of making independent diagnoses. Whatever weight we may be inclined to give Sun Life's evidence, it was sufficient to support "a reasoned explanation" for Sun Life's denial of long-term disability benefits.

The district court also held that Sun Life failed to give due consideration to the Social Security Administration's disability determination. Although a failure to consider an SSA determination is a factor in reviewing a claim denial, *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd*, ___ U.S. ___, 128 S.Ct. 2343 (2008), "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan," *Whitaker*, 404 F.3d at 949. In this case, DeLisle submitted only the SSA's conclusion that she was disabled under its own eligibility criteria; she did not submit an accompanying opinion or anything else indicating the basis of the SSA's decision. As the majority recognizes, "the plan's disability criteria may differ from

the Social Security Administration's."  Majority Op. at 6.  For example, the SSA's conclusion could have been influenced by the greater deference to treating physicians that applies in the SSA context but not in ERISA actions.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-33 (2003) (declining to import a treating physician rule from the Social Security Act to ERISA).

Finally, the district court noted that Sun Life had a conflict of interest in that it was both the plan administrator and insurer and therefore had an incentive to deny DeLisle's claim, especially given her young age.  *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005).  The Supreme Court has declined to adopt a less-deferential standard of review where a conflict of interest exists:  the conflict is "but one factor among many that a reviewing judge must take into account."  *Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S.Ct. 2343, 2351 (2008); *see also Calvert*, 409 F.3d at 293 (noting that this Circuit has consistently viewed a conflict of interest as a factor to consider in applying the arbitrary-and-capricious standard).  Here, Sun Life retained six, independent medical professionals to review DeLisle's medical records, and all of them concluded that her evidence did not support a finding of disability.  Even if the experts retained by Sun Life might have had an incentive to find no disability, DeLisle's treating physicians likewise may have been motivated to find a disability.  *See Black & Decker*, 538 U.S. at 832 ("[I]f a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'"); *see also Eastover Mining Co. v. Williams*, 338 F.3d 501, 510 (6th Cir. 2003) ("[T]reating physicians may have strong pro-claimant biases and lack the expertise held by non-treating doctors.").  Sun Life, in its role as administrator, weighed the opinions of the experts and sided with the professionals it had retained.  Given the substantial evidence supporting a finding of no disability, DeLisle has failed to show how any conflict of interest caused Sun Life to abandon a reasoned, decision-making process.

Accordingly, I would **REVERSE** the judgment of the district court.