NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1151n.06

No. 10-6549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Nov 07, 2012*
DEBORAH S. HUNT, Clerk

DEBBIE ALLEN,                                                   )
                                                               )
      Plaintiff-Appellant,                              )
                                                               )
v.                                                             )          ON APPEAL FROM THE UNITED
                                                               )          STATES DISTRICT COURT FOR
LIFE INSURANCE COMPANY OF NORTH                                )          THE WESTERN DISTRICT OF
AMERICA,                                                       )          KENTUCKY
                                                               )
      Defendant-Appellee.                               )
                                                               )

Before: SILER and COOK; Circuit Judges; STEEH, District Judge.[*]

**STEEH, District Judge**. This appeal arises from an Employee Retirement Income Security

Act ("ERISA") benefit action. Appellant Debbie Allen asks this court to reverse the district court's

grant of summary judgment and hold that Appellee Life Insurance Company of North America's

denial of long-term disability benefits to Allen was arbitrary and capricious. The administrative

record shows, however, that Allen failed to prove that she was incapable of performing material

duties of her occupation as an investment broker by virtue of a physical disability. For this reason

and based upon the following analysis, we **AFFIRM**.

---

[*] The Honorable George C. Steeh, United States District Judge for the Eastern District of
Michigan, sitting by designation.

## I. FACTS AND PROCEDURAL HISTORY

Appellant Allen was an investment broker for A.G. Edwards. While employed at A.G. Edwards, Allen participated in a long-term disability ("LTD") plan issued and administered by Appellee Life Insurance Company of North America ("LINA"). Benefits are payable under the plan only if LINA receives "due proof" that "the Employee became Totally Disabled while insured" and that the "Total Disability has continued for a period longer than the Benefit Waiting Period." An employee is considered totally disabled if, because of injury or sickness, she is unable to perform all the material duties of her regular occupation. The insurance policy also contains a mental illness, alcoholism, and drug abuse limitation that provides, in pertinent part, as follows: "The Insurance Company will pay Monthly Benefits for no more than 24 months during an Employee's lifetime for Total Disability caused or contributed to by any one or more of the following conditions: ... Bipolar affective disorder (manic depressive syndrome)...Depressive disorders...Anxiety disorders...Mental illness."

Allen submitted an LTD claim to LINA for mental illness. Dr. Marshall, Allen's treating psychiatrist, diagnosed Allen with bipolar disorder, depression, post-traumatic stress disorder, and hypothyroidism due to suppression by Prozac therapy. In its letter approving Allen's claim for LTD benefits, LINA stated that "the insurance company will pay monthly benefits for no more than 24 months . . . during the employee's lifetime for total disability caused or contributed to by mental illness while the employee is not confined to a hospital." One year later, LINA informed Allen that her benefits would expire in twelve months.

Three months prior to her benefits expiring, Allen informed LINA that she suffered from late-stage Lyme disease, resulting in a physical, rather than a mental disability. The administrative record showed that Allen failed to corroborate her claim with objective medical evidence. LINA, therefore, terminated Allen's benefits, claiming that her medical condition, Bipolar Affective Disorder with Depression, only had a twenty- four (24) month maximum limit for payment.

Throughout the course of several appeals of LINA's decision, Allen submitted medical records to support her claim that she suffered from Lyme disease, including a statement from her treating physician, Dr. Lisner, justifying his diagnosis. In Dr. Lisner's opinion, Allen's mental illness was a mistaken diagnosis that was corrected by a Lyme disease diagnosis. Dr. Lisner stated that because "several neurological as well as laboratory tests have been found to be positive, it is my believe [sic] as well as the belief of an independent physician, that the patient has Lyme disease and requires active treatment." Dr. Lisner's Physical Ability Assessment indicated that Allen was homebound due to "numerous neurological deficits, peripheral nerve damage, balance difficulties, loss of vision, blurred vision, patient undergoing extensive IV Therapy, damage to left hand–left side of body." Dr. Lisner further indicated that the results of the brain SPECT confirmed and supported the diagnosis of Chronic Neurological Dysfunction. Allen also submitted a neuropsychological evaluation, in which Dr. Olivia opined that Allen suffered from mild to moderate impairment of functions normally associated with central nervous system dysfunction. Dr. Olivia also determined that Allen experienced a dramatic drop in performance level from her prior function levels, even though her test scores were generally average. (*Id.*)

While Drs. Lisner and Olivia opined that Allen suffered from physical impairments due to Lyme disease, Dr. Shadowen, another treating physician, did not accept the Lyme disease diagnosis. Dr. Shadowen questioned whether Allen's medical records supported a Lyme disease diagnosis due to inconsistent lab results and the fact that no physician saw the alleged tick bite and rash that triggered the onset of the disease.

In response to Allen's appeal, LINA obtained two independent file reviews from internal disease specialists, Drs. Mendez and Stumacher. Dr. Mendez concluded that the information LINA provided him substantiated the clinical diagnosis of Lyme disease, but he could not confirm the diagnosis because he was unable to contact Dr. Lisner. Dr. Stumacher indicated in the "strictest sense, Ms. Allen has no evidence to support a diagnosis of tertiary Lyme disease, although she has had objective illness, including fever, peripheral neuropathy, multiple and recurrent skin lesions, as well as an abnormal SPECT scan of the central nervous system." Dr. Stumacher opined that Allen was probably physically impaired to some degree, but could not state whether she was totally disabled without additional objective testing. After reviewing the appeal and the additional independent file reviews, LINA upheld its decision to deny additional LTD income benefits, stating that "[b]ased on the fact that we have not received any additional medical information that would support an ongoing, physically disabling condition due to Lyme disease as opposed to a mental illness . . . we have determined that you are not eligible for continued Long Term Disability Benefits. . . ."

Allen then instituted this action for review of her LTD claim. The district court found that LINA's decision that a mental illness caused or contributed to Allen's total disability was arbitrary and capricious. The district court remanded the claim to the plan administrator to determine whether Allen qualified for LTD benefits due to a physical condition that rendered her totally disabled. After remand, LINA denied Allen's claim because she apparently refused to submit to the requested Independent Medical Examination ("IME"). After concluding that LINA's subsequent benefit denial failed to comply with ERISA's procedural requirements, the district court again remanded the case to the plan administrator for a determination of Allen's LTD claim.

On the second remand, LINA obtained IMEs from Drs. Griffin, a neurologist, and Baig, a board certified physician in endocrinology and metabolism. Dr. Griffin was unable to state with any reasonable degree of medical certainty whether or not Allen had Lyme disease and felt that a board certified infectious disease specialist was better qualified to make this determination. Dr. Baig's assessment of Allen listed the following conditions: hypothyroidism, Hashimoto's thyroiditis, Lyme disease, osteoarthritis, HHV6, and HHV7 disease. Relying on these IMEs and a review by LINA's medical director, LINA concluded that the records did not support the presence of Lyme disease or any other physical condition.

In response to a subsequent appeal, LINA obtained an independent file review from Dr. Greenhood, an infectious disease specialist, who opined that Allen's medical records did not support a diagnosis of Lyme disease. Relying on Dr. Greenwood's opinion, LINA denied Allen's appeal finding insufficient evidence to support Allen's claim of a physical disability.

In an effort to exhaust her administrative rights on remand, Allen filed another appeal of LINA's denial of LTD benefits. Thereafter, LINA obtained an additional independent file review from Dr. Martinello, an infectious disease specialist, who concluded that the laboratory test results provided were not consistent with Lyme disease. Dr. Martinello further opined that there was insufficient evidence in the medical records to conclude that there were any restrictions or limitations due to Lyme disease. Relying in part on the medical record review of Dr. Martinello, LINA again denied Allen's appeal.

Allen requested that the district court return the case to the active docket for further judicial review of LINA's denial of her LTD claim. The parties filed cross-motions for summary judgment on the administrative record. The district court granted LINA's motion for summary judgment. Allen timely appealed.

## II. ANALYSIS

We review "*de novo* the decision of a district court granting judgment in an ERISA disability action based on the administrative record." *Delise v. Sun Life Assurance Co.*, 558 F.3d 440, 444 (6th Cir. 2009). If, as here, the insurance plan administrator is vested with discretion to interpret the plan, we review the denial of benefits under the arbitrary and capricious standard. *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). This requires "review of the quality and quantity of the medical evidence and opinions on both sides of the issues." *McDonald v. Western -Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). The plan administrator's decision should be upheld if it is the

result of a deliberate, principled reasoning process and supported by substantial evidence. *Glenn,*
461 F.3d at 666. We consider several factors in reviewing a plan administrator's decision, including
the existence of a conflict of interest, the plan administrator's consideration of the Social Security
Administration determination, if applicable, and the quality and quantity of medical evidence and
opinions. *Id.*

### A. Conflict of Interest

A conflict of interest exists for ERISA purposes where the plan administrator evaluates and
pays benefits claims. *MetLife v. Glenn*, 554 U.S. 105, 111 (2008); *Delise v. Sun Life Assurance Co.*,
558 F.3d 440, 445 (6th Cir. 2009). We give more weight to the conflict "where circumstances
suggest a higher likelihood that it affected the benefits decision . . ." *Delise*, 558 F.3d at 445. For
example, although the treating physician rule does not apply in ERISA cases, the Supreme Court has
acknowledged that "physicians repeatedly retained by benefits plans may have an incentive to make
a finding of 'not disabled' in order to save their employers money and preserve their own consulting
arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 8632 (2003); *Delise*, 558
F.3d at 445. We recognized that when a plan administrator both decides claims and pays benefits,
it has a "clear incentive" to contract with consultants who are "inclined to find" that a claimant is
not entitled to benefits. *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d
501, 507 (6th Cir. 2005).

In this case, LINA is both the decision-maker and payor under the insurance policy. One yearly payment of LTD benefits to Allen is approximately $46,000. Considering Allen's age, payment of this claim beyond the twenty four (24) month limitation period would amount to a substantial expense for LINA. Thus, LINA has a significant financial incentive to terminate coverage or deny a claim.

Allen offers more than conclusory allegations of bias. On remand, LINA obtained IMEs of Drs. Griffin and Baig. While Dr. Griffin deferred to a board certified infectious disease doctor for diagnosis, Dr. Baig found that Allen suffered from Lyme disease. However, relying on these IMEs and a review by LINA's medical doctor, LINA concluded that the record did not support the presence of Lyme disease or any physical disability. This suggest that LINA was unable to make an objective determination when presented with evidence from its own physician that supported Allen's claim.

In response to a subsequent appeal, LINA obtained further IMEs from Dr. Greenhood and Dr. Martinello, who both opined that Allen did not suffer from Lyme disease. We view these opinions with skepticism in light of LINA's conflict of interest and evidence from both IMEs and Allen's treating physician that Allen may have suffered from Lyme disease. With this in mind, LINA's ruling that Allen did not suffer from Lyme disease is not completely baseless. The record reveals that Allen consistently failed objective medical laboratory tests for Lyme disease. Dr. Shadowen, one of Allen's own treating physicians, questioned a Lyme disease diagnosis. Just as important, the record is far from clear as to the extent Allen was debilitated from any physical

impairment. We conclude, therefore, that Allen failed to provide "due proof" to LINA that she is totally disabled and unable to perform material duties of her former position due to a physical impairment.

**B. Social Security Administration's Determination of Total Disability**

A determination that a person meets the Social Security Administration's ("SSA") uniform standards for disability benefits does not make her automatically entitled to benefits under an ERISA plan, since the plan's disability criteria may differ from the SSA's criteria. *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). Nonetheless, the SSA's decision is not meaningless. *Delise v. Sun Life Assurance Co.*, 558 F.3d 440, 446 (6th Cir. 2009). There is no technical requirement to explicitly distinguish a favorable Social Security determination in every case, but "[i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious." *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008).

In the present case, LINA encouraged Allen to apply for benefits with the SSA, and it received a deduction based on those benefits. The Administrative Law Judge ("ALJ") concluded that "[t]he medical evidence establishes that the claimant has the following severe impairments:

residuals from Lyme disease and an adjustment disorder with depression and anxiety." However,

LINA explained why its decision was consistent with the SSA decision. LINA stated:

> The ALJ's report concluded that she was not able to engage in sedentary work solely by virtue of her physical limitations; but the effects of her substantial impairment in the ability to maintain concentration and attention, tolerate work stress, adapt to changes in the work setting and interact with supervisors, co-workers and the general public combined to render her totally disabled. This conclusion is consistent with the logic behind our denial and the very wording of the Mental Illness Limitation.

The SSA's determination of Allen's disability hinged on both physical and mental

disabilities. The ALJ's report relies heavily on Allen's mental, rather than her physical disabilities

in its determination. As such, LINA's determination is consistent with the SSA's disability

determination.

### C. Quality and Quantity of Medical Evidence

There is conflicting evidence regarding whether Allen has Stage IV Lyme disease. Dr. Lisner

categorically stated that Allen has Lyme disease. Dr. Mendez concluded that the information LINA

provided him substantiates the clinical diagnosis of Lyme disease. Dr. Stumacher opined that Allen

had symptoms consistent with Lyme disease, but in the strictest sense, she did not have evidence of

the disease. Dr. Griffin deferred to an infectious disease specialist. Both Drs. Greenhood and

Martinello concluded that Allen did not have Lyme disease or any restrictions therefrom.

Additionally, Dr. Shadowen questioned whether Allen's medical records supported a finding of

Lyme disease. For reasons already presented, LINA's position that Allen does not suffer from Lyme disease is not baseless.

Allen failed to provide LINA with "due proof" that she was totally disabled from Lyme disease and unable to perform material portions of her former occupation. The only physician that opined that Allen was totally disabled was Dr. Lisner. LINA was not required to rely solely on Dr. Lisner's opinion that Allen was totally disabled. None of the IMEs provided any evidence that Allen was totally disabled as defined by Allen's LTD plan. As such, LINA's determination adequately reflected the quality and quantity of medical evidence it received from Allen.

### III. CONCLUSION

For the foregoing reasons, LINA's determination was not arbitrary and capricious. We therefore **AFFIRM** the district court's decision.