NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0195n.06

No. 15-6010

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MICHAEL A. CANNON, Executor for and on behalf of the Estate of Christine Cannon, | ) ) ) | **FILED**<br>Apr 07, 2016<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF |
| PNC FINANCIAL SERVICES GROUP AND AFFILIATES LONG TERM DISABILITY PLAN, | ) ) ) ) | KENTUCKY |
| Defendant-Appellee. | ) | |

BEFORE: MERRITT, SUHRHEINRICH, and DONALD, Circuit Judges.

PER CURIAM. Michael A. Cannon, executor for and on behalf of the Estate of Christine Cannon, appeals the district court's judgment on the administrative record in favor of The PNC Financial Services Group, Inc. and Affiliates Long Term Disability Plan ("Plan") in this action to recover long term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B).

Christine Cannon worked for The PNC Financial Services Group as an investigations senior analyst, a sedentary job involving computer and telephone use. After undergoing a hysterectomy on October 26, 2012, Cannon returned to work on December 31, 2012, but stopped working a few days later due to abdominal and pelvic pain. Cannon reported that she could "type[] and do everything except sit." (RE 22, Page ID # 89). Cannon subsequently made a claim for LTD benefits under the Plan, which was administered by Liberty Life Assurance

Company of Boston ("Liberty"). To be eligible for LTD benefits under the Plan, the participant must be disabled, which means for the first two years that "your disability makes you unable to perform the material or essential duties of your own occupation as it is normally performed in the national economy." (RE 22-4, Page ID # 283). Liberty initially determined that Cannon was eligible to receive LTD benefits but advised her that "we will continue to review your claim and request medical documentation to support your continued disability." (RE 22-2, Page ID # 202). After referring her claim for medical and vocational reviews, Liberty discontinued Cannon's LTD benefits on the basis that she no longer met the Plan's definition of disability. Cannon filed an appeal, which Liberty denied, maintaining that she no longer met the Plan's definition of disability.

Cannon then brought this ERISA action to recover LTD benefits under the Plan. The district court granted judgment on the administrative record in favor of the Plan, concluding that Liberty's decision to deny Cannon's LTD benefits was neither arbitrary nor capricious. This timely appeal followed.

Where, as here, the plan grants the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," we "review the administrator's denial of benefits under the arbitrary-and-capricious standard." *Shaw v. AT & T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 546 (6th Cir. 2015) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "Under the arbitrary-and-capricious standard, we must uphold the plan administrator's decision if it is 'the result of a deliberate, principled reasoning process' and 'supported by substantial evidence.'" *Id.* at 547 (quoting *DeLisle v. Sun Life Assurance Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009)). Our review, however, "is not a rubber stamp. We must still evaluate the quality and quantity of the medical opinions on both sides." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009).

In her initial interview with Liberty, Cannon reported that she was suffering from abdominal and pelvic pain, that sitting caused the worst pain, and that she could "type[] and do everything except sit." (RE 22, Page ID # 89). Cannon's activities questionnaire submitted in support of her claim for LTD benefits indicated that she was unable to sit for any length of time and that she could not engage in any gainful employment because of "sever[e] pain" and an inability to sit. (RE 22-1, Page ID # 176, 178). Cannon's records from several physicians and from physical therapy reflected her complaints of severe pelvic or vaginal pain, particularly when sitting. (RE 22, Page ID # 129; RE 22-1, Page ID # 158, 163; RE 22-2, Page ID # 186, 189, 191, 214-15, 217-18, 231-32). After performing a cystoscopy and laparoscopy on March 26, 2013, Dr. Robert McQuady with the Pelvic Pain Regional Specialty Center diagnosed Cannon with pelvic abdominal pain, intra-abdominal adhesions, and pudendal neuralgia. (RE 22-2, Page ID # 237). Dr. McQuady instructed Cannon to be off work from the date of the surgery until approximately April 23, 2013, and noted that her "[r]eturn to work will be further discussed at post-operative appointments." (RE 22-2, Page ID # 230).

Liberty discontinued Cannon's LTD benefits on April 15, 2013. In doing so, Liberty relied on a peer review prepared by Dr. Stuart Glassman with the Medical Consultants Network. Dr. Glassman stated that Cannon's "impairments currently are subjective complaints of abdominal pain, no clear etiology," failing to mention Dr. McQuady's diagnosis of pudendal neuralgia. (RE 22-3, Page ID # 263). Dr. Glassman concluded:

> It is felt that she does have a work capability, and it is at least light duty, lifting 20 pounds maximally, 10 pounds frequently, 8 hours a day, 5 days a week. Her motor examination was normal, even with complaints of abdominal pain. It is felt that based upon her pain complaints, only occasional bending, kneeling, and squatting would be appropriate for her. She could drive occasionally, as well.

(*Id.*). Although Cannon's sedentary job involved sitting most of the time and she complained of pain while sitting, neither Liberty nor Dr. Glassman addressed her ability to sit.

In support of her appeal from the denial of LTD benefits, Cannon submitted a letter from Dr. McQuady stating:

> She is unable to work. Her job requires that she be able to sit and patient has intense pain with sitting. She was diagnosed with pudendal neuralgia as well as pelvic floor muscle dysfunction and these conditions are associated with pain with sitting and it is not possible for the patient to perform a job that requires that she sit.

(RE 22-3, Page ID # 269). In denying Cannon's appeal, Liberty noted receipt of Dr. McQuady's letter but stated that "no further contemporaneous examination or treatment records have been provided to validate his assertions that Ms. Cannon remained restricted and limited such that she was unable to work." (RE 22-3, Page ID # 274). Liberty once again recited the restrictions identified by its medical reviewers without addressing Cannon's ability to sit.

Liberty's decision to deny benefits was arbitrary and capricious for two reasons. First, Cannon asserted that she could not perform her job because her pelvic pain made her unable to sit. Liberty failed to consider that Cannon's two diagnoses—pudendal neuralgia and pelvic floor muscle dysfunction—are associated with pain while sitting. Those diagnoses and their effects are precisely the anatomic explanation we require for a demonstration of pain. To fail to address them is an arbitrary and capricious denial of benefits. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir. 1996) ("In the absence of any definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision was arbitrary and capricious.").

Second, Liberty's failure to consider Dr. McQuady's letter without supplemental medical evidence was arbitrary and capricious. *See Glenn v. MetLife*, 461 F.3d 660, 672 (6th Cir. 2006) ("[T]he failure to consider evidence that is offered after an initial denial of benefits renders a final denial of benefits arbitrary and capricious."). Dr. McQuady's letter provided an explanation for Cannon's need for disability based on existing medical evidence—namely,

Cannon's two diagnoses as a result of the recent surgery that he performed on her and that she was still recovering from—and should have been addressed by Liberty.

"[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which [s]he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Shaw*, 795 F.3d at 551 (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006)). Because we cannot say that Cannon was clearly entitled to benefits, the appropriate remedy is to remand to Liberty for a full and fair inquiry into her claim for LTD benefits.

For the foregoing reasons, we **VACATE** the district court's judgment and **REMAND** the case for proceedings consistent with this opinion.