**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0250n.06

**Case No. 16-4225**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| STANLEY D. ROTHE, | ) | |
| | ) | **FILED** |
| *Plaintiff-Appellant*, | ) | May 02, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| DUKE ENERGY LONG TERM DISABILITY | ) | DISTRICT OF OHIO |
| PLAN; DUKE ENERGY BENEFITS | ) | |
| COMMITTEE; LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON, | ) | |
| | ) | O P I N I O N |
| *Defendants-Appellees*. | | |

BEFORE:     COLE, Chief Judge; SUTTON and KETHLEDGE, Circuit Judges.

COLE, Chief Judge.  Stanley Rothe brought this case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., after Liberty Life Assurance Company of Boston ("Liberty") denied his claim for long-term disability benefits.  Rothe argues that Liberty's determination was arbitrary and capricious.  The record establishes that Liberty conducted a reasoned decision-making process and that its decision is supported by substantial evidence.  Accordingly, Liberty's decision was not arbitrary and capricious.  We, therefore, affirm the district court's grant of summary judgment to Liberty.

## I. BACKGROUND

Rothe worked as a gas controller for Duke Energy Corporation ("Duke"). Rothe filed a claim for long-term disability ("LTD") benefits, with a disability start date of January 3, 2013. Rothe's claim was based on his various chronic, degenerative medical conditions, including "Spinal fusion" and "Backache NOS." (Administrative Record, R. 11, PageID 135.) Rothe submitted his claim pursuant to Duke's Group Disability Income Policy. Under the policy, Liberty determines eligibility for benefits and then pays those benefits.

The policy sets forth the relevant terms, defining "Disability" and "Disabled" under Section 2(a)(i) as follows:

> [I]f the Covered Person is eligible for the 24 Month Own Occupation benefit, "**Disability**" or "**Disabled**" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation.

(*Id.* at 101.) Section 2 also defines "Own Occupation" as follows:

> "**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

(*Id.* at 103.) As part of Liberty's review of Rothe's claim, Vocational Case Manager Ellen Levine determined as part of her "Occupational Analysis/Vocational Review" that Rothe's "own occupation" as performed in the national economy is most analogous to "Gas Dispatcher," as listed in the Department of Labor's Dictionary of Occupational Titles ("DOT"). Levine also concluded that this occupation is most often performed at a sedentary work level. Levine referenced the Department of Labor's definition of sedentary work, which classifies such work as exerting up to ten pounds of force up to one third of the time and a negligible amount of

force—in lifting, carrying, pushing, pulling, or otherwise moving objects—between one and two thirds of the time. The definition also requires that the job involve sitting most of the time, although it may involve standing or walking occasionally.

The appeal review consultant considered medical reports from Rothe's attending physicians, Drs. Michael Rohmiller, Justin Kruer, Gregory Delorenzo, and Robert Noelker, to supplement his claim. Rohmiller concluded that Rothe was permanently disabled from his job as a gas controller at Duke. Kruer determined that Rothe had severe physical restrictions and limitations that would affect him in the workplace. Noelker reported that Rothe's mental status would prevent him from performing the essential elements of his job. Liberty had Dr. Alvin Gallanosa conduct an independent medical examination of Rothe. In addition, Dr. Jamie Lee Lewis conducted a peer review, and Dr. David Monti conducted a clinical case review. Liberty's medical experts concluded that Rothe was capable of performing sedentary work.

On April 23, 2014, Liberty denied Rothe's claim because it found that he was not disabled under the policy. Rothe administratively appealed and submitted additional materials. On appeal, Liberty retained Drs. Milton Klein and Peter Sugerman, who conducted a file review of the physician reports and determined that Rothe would be able to perform at a sedentary work level. On December 23, 2014, Liberty upheld its denial.

On March 30, 2015, Rothe filed this case with the district court under ERISA, claiming that Liberty acted arbitrarily and capriciously in denying his LTD benefits. Both parties filed motions for summary judgment. On September 30, 2016, the district court denied Rothe's motion and granted summary judgment to Liberty. Rothe timely appealed to this court.

## II. ANALYSIS

### A. Standard of Review

We review de novo a decision "granting judgment in an ERISA disability benefit action based on an administrative record, and apply the same legal standard as did the district court." *Glenn v. MetLife*, 461 F.3d 660, 665–66 (6th Cir. 2006) (citation omitted). "In this case, the district court appropriately reviewed the record under the 'arbitrary and capricious' standard, because the plan at issue granted the plan administrator discretionary authority to interpret the terms of the plan and to determine benefits." *See id.* at 666 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–15 (1989)).

A plan administrator's decision will not be deemed arbitrary or capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). This standard "is the least demanding form of judicial review of administrative action." *Watson v. Solis*, 693 F.3d 620, 623 (6th Cir. 2012) (quoting *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011)). We will uphold a decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991) (per curiam).

### B. Conflict of Interest

Rothe claims that Liberty has a conflict of interest in this case because it both determines eligibility for benefits and pays them.

"[A] conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when, as here, the administrator is an insurance company and not the beneficiary's employer." *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009). Conflicts of interest do not change the standard of review, but, where one exists, we weigh it in determining whether the benefits decision was arbitrary and capricious. *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998). We give more weight to the conflict in circumstances that suggest a higher likelihood that it affected the benefits decision. *DeLisle*, 558 F.3d at 445. Relevant circumstances include whether the administrator repeatedly retains the same physician, *id.*, both decides claims and pays benefits, *id.*, or uses in-house consultants, *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 393 (6th Cir. 2009).

Here, Liberty retained reviewing physicians, decided the claim, would be responsible for paying benefits, and used an in-house vocational expert. Accordingly, we weigh Liberty's conflict in deciding whether its decision was arbitrary and capricious.

**C. Liberty was not Arbitrary and Capricious in Denying Rothe's Claim**

Liberty denied Rothe's claim for LTD benefits because it determined that he could perform his "own occupation" as defined by the policy. Rothe argues that this determination was arbitrary and capricious because Liberty disregarded his actual job requirements, the applicable federal regulations, and substantial medical testimony.

*1. Own Occupation*

To receive LTD benefits under the policy, Rothe needed to prove that he (1) continues to have a disability, (2) needs regular attendance by a physician, and (3) receives the appropriate available treatment. The policy defines a disabled person as one who "as a result of Injury or Sickness is unable to perform the Material and Substantial Duties of his Own Occupation."

(Administrative Record, R. 11, PageID 101.) The policy further defines "own occupation" as "the Covered Person's occupation as it is normally performed in the national economy." (*Id.* at 103.)

We have held that "own occupation" is a general term that refers to categories of work as opposed to the employee's particular duties. *Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 299–300 (6th Cir. 2006). In *Osborne*, we held that it was not arbitrary and capricious to look to sources such as the DOT to determine a person's own occupation. *Id.* at 299. Levine determined that Rothe's job tasks matched the position of "Gas Dispatcher" as listed in the DOT. Rothe argues that Levine ignored his Duke Physical Job Evaluation Form, which listed the physical requirements of a gas controller at Duke. However, the policy does not define "own occupation" in terms of Rothe's particular job; the policy defines it in terms of the occupation as "performed in the national economy." (Administrative Record, R. 11, PageID 103.) Levine reasonably compared Rothe's duties, as described in his Duke job description, to the DOT to determine the best comparison for Rothe's job in the national economy.

### 2. *Federal Regulations*

Rothe further argues that Liberty acted arbitrarily and capriciously by failing to consider whether the side effects of his medication would prevent him from complying with federal regulations governing gas controllers. This argument is also unavailing. Rothe cannot dispute that Liberty relied on substantial medical evidence in concluding that the side effects of Rothe's prescriptions do not preclude him from "perform[ing] the Material and Substantial Duties of his Own Occupation." (Administrative Record, R. 11, PageID 101.) Lewis, Monti, and Klein reported that the medical evidence does not support Rothe's claim that the medications cause side effects that would make him unable to perform the duties of his occupation. Moreover,

Rothe does not point to any contrary report from an expert regarding his side effects, relying instead on the listing of common side effects for his prescribed medications. Liberty therefore did not act arbitrarily and capriciously because it based its decision on substantial medical evidence.

Rothe also claims that his prescriptions for Norco (hydrocodone-acetaminophen) and Ultram (tramadol) would cause him to fail a federally required drug test. *See* 49 CFR § 199.3. However, this argument is precluded by our previous holding that Liberty was not arbitrary and capricious in deeming Rothe's "own occupation" to be that of a gas dispatcher and Rothe's admission that gas dispatcher is not a federally regulated position. (*See* Appellant Br. 26.)

### 3. Medical Testimony

Rothe argues that Liberty disregarded substantial medical testimony in finding that he could "perform the Material and Substantial Duties of his Own Occupation." (Administrative Record, R. 11, PageID 101.) However, Rothe's arguments are unpersuasive. He argues that even though Liberty acknowledged the medical reports of Rohmiller, Kruer, Delorenzo, and Noelker, they did not consider the "history and findings" in their reports. (Appellant Br. 39–40.) But these were not the only medical reports in the record. The record also includes the reports of Lewis, Gallanosa, Monti, Klein, and Sugerman. The conclusions of each expert were not uniform, and Liberty had to weigh the conflicting reports. *See Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009) (recognizing that it is not arbitrary and capricious to deny benefits "when, although the treating physician believed the claimant was totally disabled, other medical evidence indicated that the claimant could perform sedentary work") (internal quotation marks omitted). Liberty relied on substantial medical testimony in making its decision and did

not disregard any expert.  Under the arbitrary and capricious standard of review, that is enough to constitute a reasoned decision-making process.

### III.  CONCLUSION

The district court properly determined that Liberty did not act arbitrarily and capriciously in denying Rothe's claim for LTD benefits.  Accordingly, we affirm the district court's grant of summary judgment.